# CHARLESTON.

J. A. VINTROUX, ADMINISTRATOR, *etc.* v. JOSEPH E. CHILTON
TRUSTEE *et als.*

Submitted September 23, 1919.    Decided September 30, 1919.

1. CORPORATIONS—*Ratable Contribution by Stockholders Unnecessary to Sale by Corporation of Part of Stock.*

   Though ordinarily a contract by which a corporation and some of its stockholders, for a valuable consideration moving to the corporation, bind themselves to a sale of a portion of its capital stock to a stranger, all of which has been issued and is owned by its stockholders, might require ratable contribution by all of the stockholders, of a sufficient number of shares to make up the amount of stock sold, a sale of stock so made for a consideration moving in part to the contracting stockholders and evidenced by a contract indicative of purpose to bind them to a sale or transfer of the required amount of stock from their own holdings, does not, as a matter of law or equity, require such ratable contribution.  (p. 612).

2. SAME—*Noncontracting Stockholders Not Bound to Contribute on Contract of Corporation to Sell Part of Stock.*

   In such case, participation of a non-contracting stockholder in a stockholders meeting authorizing negotioation of the contract, by a resolution which is silent as to the sources from which the stock is to be obtained, and a meeting of the board of directors at which the contract was ratified and his joinder in a contract pooling practically all of the stock, including his, creating a voting trust, required by the contract of sale, and declaring the deposit of the stock to have been made for the uses, objects and purposes set forth in the contract, do not conclusively bind such stockholder to contribute nor make out a clear case of contract on his part so to do.  (p. 612).

3. SAME—*Construction of Ambiguous Contract—Conduct of Parties Considered*

   As to the sources of contribution, a contract so made and evidenced, is ambiguous and indefinite, and, on the interpretation thereof, the acts and conduct of the parties in the application of its terms and carrying them into effect, amounting to contemporaneous or practical construction, are entitled to great weight.  (p. 612).

4. SAME—*Evidence Showing Stockholder Not Bound to Contribute—
   Sale of Stock by Corporation.*

   The issuance of trustee's certificates to such non-contracting
   stockholder, representing all the shares originally owned by him
   and deposited with the trustee, and acquiescence therein for a
   period of more than three years, is practically conclusive in
   his favor, under the circumstances above indicated. (p. 612).

Appeal from Circuit Court, McDowell County.

Bill by L. T. Vintroux, revived after his death by J. A.
Vintroux, administrator etc., against the Holley Oil & De-
velopment Company, Joseph E. Chilton, trustee, etc., and
James A. Holley and Samuel Stephenson, as directors, with
cross-bill answer by Holley and Stephenson and answer by
Joseph E. Chilton, in his own right and as trustee, to the bill
and cross-bill answer, and separate demurrer and answer to
the bill by the United Fuel & Gas Company, a former stock-
holder, with replication to answer of defendant Holley and
Stephenson. Bill and cross-bill dismissed, and complain-
ant appeals. *Reversed, decree for plaintiff, remanded.*

*McClintic, Mathews & Campbell,* for appellant.

*Davis, Davis & Hall* and *Koontz & Hurlbutt,* for appellees.

POFFENBARGER, JUDGE:

The controversy brought up for determination by this ap-
peal arose out of a distribution of assets of a corporation, the
Holley Oil and Development Company, among its stock-
holders, in the form of a dividend, the corporation having
converted all of its assets into cash and terminated its opera-
tions. At that time, L. T. Vintroux claimed to be the owner
of thirty shares of the capital stock of the corporation, and
his title to fifteen shares thereof was admitted by the board
of directors and the trustee in whose hands the certificates
of all of the shares were deposited, but they denied his right
to the other fifteen shares. They paid him what was esti-
mated to be his dividend on fifteen shares, and they say that,
in view of the dispute as to his right to the dividend on the
others, the money applicable to them, as estimated, was de-
posited in a bank, The Union Trust Company of Charles-
ton, W. Va. At that time, there seems to have been no

controversy as to the amount of the dividend. At August Rules, 1914, Vintroux filed his bill praying for a decree against the corporation, the trustee and the members of the board of directors, for the amount of money in dispute, $14,000.00. At September Rules, 1914, James A. Holley and Samuel Stephenson, two members of the board of directors and large stockholders of the corporation, filed their answer to the bill, in which they set up new matter and prayed for affirmative relief against Vintroux. On May 17, 1917, Joseph E. Chilton who had no beneficial interest in the company, but was a trustee holding practically all of the stock and a director, filed his answer in his own right and as trustee, to both the bill and the cross-bill answer. On September 16, 1914, the United Fuel Gas Co., a corporation which had been a large stockholder in the Holley Oil and Development Co., just prior to the sale of its assets, filed its separate demurrer and answer to the bill. Vintroux having died, the cause was revived in the name of his administrator, J. A. Vintroux, by an order entered January 3, 1918, and he filed an amended and supplemental bill and bill of revivor, containing a special replication to the matters set up in the answer of Holley and Stephenson, as grounds of their prayer for cross-relief, May 15, 1918. On the motion of Holley and Stephenson it was ordered that their answer to the original bill should stand and be treated as their answer to the amended and supplemental bill. By the decree appealed from, both bills were dismissed.

The transaction involved began, sometime prior to the year 1905, with the organization of the Holley Oil and Development Co., having a subscribed capital stock of $7,500.00. Before its organization, James A. Holley, Samuel Stephenson and L. T. Vintroux, the last named party acting for and on behalf of the other two, had obtained leases upon various tracts and parcels of land in the counties of Putman, Lincoln and Kanawha for oil and gas development. The leases were assigned to the corporation, and, on April 10, 1905, the former owners thereof entered into what was termed an agreement of settlement, by which Vintroux was to have thirty shares of the capital stock of the company, and Holley and Stephenson 360 shares each. It was further agreed

that Holley and Stephenson should contribute for development and expenses, the sum of $35,000.00, or such portion of that amount as they had not already expended. It was recited that Vintroux's $3,000.00 had been paid into the company, by cash and services rendered. At a meeting of the stockholders of the company, held on the same day, the provisions of this agreement were ratified, and it was provided that an additional 675 shares of stock should be issued, making a total of 750 shares or $75,000.00, the shares being $100.00 each. Of the original stock, 36 shares were issued to Holley, 36 to Stephenson, one to Ira P. Champe one to A. J. Guill and one to Ira G. Sayre. Of the 675 new shares representing the purchase price of the leases, 30 were issued to Vintroux, 321 to Holley, 321 to Stephenson, two to Champe and one to W. E. R. Byrne. All of the shares were issued as being fully paid up and non-assessable.

At a meeting of the board of directors held a little more than two months later, June 26, 1905, and attended by Holley, Stephenson, Vintroux and Byrne, a resolution was adopted, reciting a proposition of the United States Natural Gas Co., a corporation, for acquisition by it of one-half of the stock of the Holley Oil and Development Co., upon terms to be agreed upon by the holders of the stock of the company, and upon condition that the former company should pay over to the president of the Holley Company, a sum not less than $25,000.00, to be used and expended in further development of certain territory held under lease by the Holley Company; and authorizing and empowering the president J. A. Holley, to accept the proposition, for and on behalf of the corporation, and to impose such other and further conditions favorable to the corporation, as in his judgment might be proper and expedient, and to execute, acknowledge and deliver on its behalf all apt and proper writings necessary to the carrying of such agreement into effect. This resolution set forth several of the material provisions of the contract afterwards made between Holley, Stephenson, and the Holley Oil and Development Company, of the one part, and the United States Natural Gas Company of the other.

By that contract, dated, July 6, 1905, the United States

Natural Gas Co., agreed to pay to the Holley Oil and Development Co., $25,000.00, within fifteen days from the date thereof, to be used in the work of testing and developing the territory, under the general direction of James A. Holley. It provided for a reorganization of the board of directors of the Holley Company in such manner as to make it consist of Stephenson, Holley and Joseph E. Chilton, and for deposit of all of the shares of stock of that company, except three used for qualifying directors, and the 30 shares not then owned by Holley and Stephenson, in the hands of Joseph E. Chilton, to be held by him in trust for the purposes of the agreement; and, further, for like deposit of the 30 shares they did not then own, the Vintroux shares, if Holley and Stephenson should acquire them. Another provision of the contract, the one most vitally and directly involved here, gave the United States Natural Gas Co., upon certain conditions, the full one-half of the capital stock of the corporation, 375 shares, and obligated it to pay, as and for the purchase price thereof, to Stephenson and Holley, a sum equal to the amount of money actually expended prior to the date of the contract, in procurement of the leases and development of the property, which is shown to have been $43,354.51. The condition precedent to this transfer of stock and obligation to pay, was production from existing wells and others to be drilled, of a daily open flow of 25,000,000 cubic feet of gas. The shares of stock to be transferred to Joseph E. Chilton, Trustee, were to remain in his hands until the expiration of the trust created by the contract. To secure payment of the amount to become due Stephenson and Holley, the United States Natural Gas Co. bound itself to deposit with the trustee, $50,000.00 of its bonds, the coupons from which he was to detach from time to time and return to the company. Holley guaranteed that, at the date of the deposit of the shares, his company should be free from indebtedness, should not become indebted except for expenses of usual and ordinary development of its property, and should not, during the period of deposit, distribute, declare or pay a dividend upon any shares of its stock, or divide or apportion any of its property among its stockholders. About 5,000

acres of the company's territory was expressly excepted from
the operation of the contract.   In case of the failure to pro-
duce an open flow of 25,000,000 cubic feet of gas per day,
by the expenditure of the $25,000.00 advanced, the United
States Natural Gas Company was to be under no obligation
to purchase the 375 shares, or to pay Stephenson and Holley
the purchase price thereof, but it should, nevertheless, have
right of election to take and acquire the stock at and for the
purchase price thereof, as defined by the contract; and, in
the event of its failure to take such 375 shares, they were to
be returned by the trustee to Stephenson and Holley, and
the bonds deposited by the United States Natural Gas Co.
were to be returned to it, and the $25,000.00 advanced by that
company to become a debt against the Holley Oil and Develop-
ment Co. and constitute a lien upon its property.   The Unit-
ed States Natural Gas Co. also bound itself, within a reason-
able time, to construct a pipe-line from the territory of the
Holley Company to connect with one then owned or sub-
sequently to be constructed by itself, and also to take and re-
ceive through such pipe-line 5,000,000 cubic feet of gas per
day, at the price of 4 cents per thousand cubic feet.   The
stock deposited with the trustee was to remain in his hands
for a period of ten years, unless the United States Natural
Gas Co. should elect not to acquire one-half thereof, and dur-
ing that period, the trustee was to vote the stock in such
manner as should be agreed upon between the parties.   In
the event of any dispute or disagreement that might arise
in the execution of the contract, the trustee was constituted
an arbitrator, for settlement thereof.   The United States
Natural Gas Co. was given an option to purchase the other
stock of Holley and Stephenson, if they should desire to
sell, and Stephenson and Holley were given a like option
on the stock of the United States Natural Gas Company.

At a meeting of the board of directors held on July 6,
1905, the date of the contract, and attended by Vintroux,
the contract was approved, ratified and confirmed; and on the
same day, all of the stockholders entered into an agreement
with Joseph E. Chilton, Trustee, referring to the contract
of the United States Natural Gas Co., reciting its provision

that, upon certain terms and conditions to be performed by that company, "The said Holley and Stephenson will sell and transfer to the said United States Natural Gas Co. 375 shares, or fifty per cent. of the stock of the said Holley Oil and Development Co.," and the provision for deposit of the stock with the said trustee, and granting, conveying, assigning and transferring to the trustee 747 shares, contributed as follows: Holley 356, Stephenson 356, Vintroux 30, Champe three, Guill one and Byrne one. This agreement provided that the shares so transferred should be held "For the uses, objects and purposes as set forth and stipulated in the said writing of the 6th day of July 1905, for the period of ten years from said date, unless sooner terminated by the limitations in said writing provided." In the event of the acquisition of one-half of the shares by the United States Natural Gas Co., the trustee was to hold those shares for the benefit of itself and its assigns. Plenary authority was conferred upon the trustee to vote the stock held by him during the period of the trust. It was further agreed, that, if the United States Natural Gas Co. should buy the 375 shares, the trustee should execute and deliver to any person holding any shares, if required, a trustee's certificate, "Showing the interest which such person may have in such stock and his right to participate in dividends declared thereon."

The condition precedent to vesting of title to 375 shares of stock of the Holley Oil and Development Co. in the United States Natural Gas Co., production of sufficient gas to make a daily open flow of 25,000,000 cubic feet, was accomplished on a date not clearly disclosed by the record. It seems to have occurred prior to June 23, 1910, for on that day the trustee issued to Vintroux his certificates, representing thirty shares. The agreement pooling the stock and constituting the voting trust did not contemplate nor provide for issuance of such certificates, except in the event of the acquisition of one-half of the stock by the United States Natural Gas Company. The happening of that event was essential to determination of the ultimate rights of the parties as to the stock and the number of shares they should have, for the 375 shares going to the United States Natural Gas Com-

pany had to be contributed from the shares deposited with the trustee as' the stock of Holley, Stephenson, Vintroux, Champe, Guill and Byrne. That company seems to have acquired the 375 shares prior to September 4, 1909, for, on that date, it executed a deed by which it conveyed, assigned and set over to the United Fuel Gas Company said 375 shares of stock, together with other property.

On April 24, 1914, the property of the Holley Oil and Development Company was sold directly or indirectly to the Wayland Oil and Gas Company, apparently for the sum of $740,000.00, out of which a commission of $30,000.00 was paid for effectuation of the sale. A payment of $10,000.00 to the United Fuel Gas Company, in connection with the transaction, introduces an element of uncertainty as to the exact amount of the purchase price. If it is to be included, the property sold for $750,000.00, otherwise for $740,000.00. As it was the owner of one-half of the stock, its assent to the sale of the property to the Wayland Oil and Gas Co. was essential, and it seems to have been unwilling to give its assent. At least, its unwillingness is suggested in an argument founded upon facts and circumstances disclosed by the reocrd, and averred by the trustee's answer. Its answer avers that, March 24, 1914, it gave Stephenson an option until the 24th day of April 1914, to purchase its 375 shares at the price of $370,-000.00, of which sum $10,000.00 was then paid, and the balance of which was to be paid on or before April 24, 1914, by deposit thereof to its credit in the Charleston National Bank. It further avers that, prior to April 24, 1914, Stephenson did deposit or cause to be deposited to its credit the said sum of $360,000.00, and thereby became the owner of said stock. The trustee avers in his answer that the Wayland Oil and Gas Company paid the $10,000.00 to the United Fuel Gas Company, in order to obtain its consent to an option for the purchase of the Holley Oil and Development Company's property. Nor does the case seem to be fully developed as to the amount of commissions properly chargeable. The propriety of one payment, $30,000.00, is not questioned, but there are two other items, one of $5,000.00 and the other of $2,500.00, which, according to the answer

of the trustee, were paid by stockholders out of their dividends, the $5,000.00 item by Holley, Stephenson and Champe, and the $2,500.00 item, by Stephenson. The board of directors seem to have disbursed $691,000.00 to the stockholders and deposited $14,000.00 in the bank, the latter item being in dispute, making $705,000.00, leaving undistributed $35,-000.00, an amount equal to the aggregate of two of the commission items. These uncertainties constitute the occasion of the claim set up in the amended and supplemental bill for an accounting and a decree going beyond the $14,000.00 admittedly applicable, as a dividend to the fifteen shares the title to which is in dispute.

The sources from which the 375 shares obtained by the United States Natural Gas Company were to be made up constitute the subject matter of the basic inquiry in the cause. The theory of the bill and amended and supplemental bill is that Holley and Stephenson obligated themselves to furnish the 375 shares out of their holdings, and that they did so. On the contrary, it is insisted by the respondents, that all of the holders of stock, including Vintroux, were to contribute ratably to the shares disposed of to the United States Natural Gas Company, and that one-half of his stock was included in the sale. In support of his position, the plaintiff relies largely upon the recital of the contract of April 10, 1905, saying Vintroux's stock had been paid for in cash and services, and the provision thereof obligating Holley and Stephenson to furnish at least $35,000.00 for development purposes and expenses; the provision of the contract of July 6, 1905, obligating the United States Natural Gas Company conditionally, to pay to Holley and Stephenson, as and for the purchase price of the stock it was to obtain, a sum of money equal to the amount of cash actually expended by or on behalf of the company prior to that date, $43,354.51; the provision of the contract of July 6, 1905, between the stockholders and Joseph E. Chilton, Trustee, reciting that Holley and Stephenson had conditionally agreed to sell and transfer one-half of the stock of the company to the United States Natural Gas Company; the issuance to Vintroux, presumably after the performance of the condition vesting title

to one-half the stock in the United States Natural Gas Company, of trustee's certificates for thirty shares; and the fact that the certificates were issued by the trustee, upon the demand of Vintroux, after the former had communicated with General Holley, by telephone, and had been informed by Holley that Vintroux was entitled to thirty shares. In support of their position, the defendant strongly invoked the fact that the contract with the United States Natural Gas Company was made largely for the benefit of the Holley Oil and Development Co.; the actual use of the $25,000.00 procured by that contract, in the development of the latter company's property; the provision of the contract of April 10, 1905, saying: "The profits and losses if any may arise from the said Holley Oil & Development Company in the future to be shared by the parties holding the stock therein, in proportion to their respective interest;" the participation of Vintroux in the meeting of the board of directors of July 6, 1905, at which the contract for the sale of the shares was ratified and confirmed; the transfer of the shares of Vintroux to the trustee; and the recital of the trust agreement, that the deposit was made for the uses, objects and purposes set forth in the contract with the United States Natural Gas Company.

The inferences arising from Vintroux's participation in the meeting of the board of directors of June 26, 1905, authorizing and empowering Holley to enter upon the proposed negotiation with the United States Natural Gas Company, and that of July 6, 1905, at which the contract was ratified, his joinder in the contract of July 6, 1905, creating the trust and declaring the deposit of the stock to have been made for the uses, objects and purposes of the contract, and his knowledge of the use to which the $25,000.00 advanced was devoted, are, by no means, conclusive, when viewed in the light of all the conditions and the express terms of some of the documents, indicating the contrary thereof. By the agreement of April 10, 1905, Holley and Stephenson, presumptively on account of the large amount of the stock assigned to them, bound themselves to expend for the benefit of the company at least $35,000.00, and there was no provision in

that contract for reimbursement of that amount from the treasury of the company or otherwise. The context of this provision indicates that this money was to be expended on account of stock, by way of equalization. Vintroux was relieved from any such payment, on the ground of his having paid for his stock in cash and services. If this is the true interpretation of that contract, respecting the advancement of the $35,000.00, the benefit derived from expenditure thereof belonged to the company and had been paid for, in so far as Vintroux or the company had any interest therein. Holley and Stephenson could not claim reimbursement of that money, in whole or in part, either from Vintroux or the corporation. It constituted the bulk of what had been expended on the property, at the date of the execution of the contract of July 6, 1905. By the terms of that contract, provision was made for return of that sum of money to Holley and Stephenson. It was to come from the United States Natural Gas Company. No doubt it was sought in that direction and from that source, because it could not be claimed from the Holley Oil and Development Company or any of its stockholders. It may be that what was expended by them in excess of $35,000.00 might have constituted an indebtedness of the corporation, but it does not appear ever to have been asserted or claimed as such. The $25,000.00 advanced by the United States Natural Gas Company was not treated as purchase money of the stock to be obtained. The status of that fund is not exactly defined by the contract. Under certain possible conditions \foreseen, it was to become a debt of the Holley Oil and Development Company. The inference that it was to be considered as a part of the purchase money of the stock is clearly negatived by that provision of the contract, which required the United States Natural Gas Company to pay to Holley and Stephenson ''a sum equal to the amount of cash money actually expended prior to the date of the contract, by or on behalf of the Holley Company, in acquiring and developing the territory, as and for the purchase money'' of such 375 shares of stock. Tested by its letter, therefore, the contract seems to have been intended to secure, conditionally, reimbursement of Holley and Ste-

phenson for the money they had expended in the development of the property, and enhancement of the stock to be retained; by them and all other stock in the company, by the,increased. development to be effected by the expenditure of the $25,- 000.00 advanced by the United States Natural Gas Company, connection of the leased territory with that company's pipe- line and its purchase of gas produced at 4 cents per thous- and cubic feet. For such reimbursement, they had no just: or equitable right to sell the stock of anybody but them- selves. By the sale of 375 shares out of their 620 shares,. they obtained the return of the $43,000.00 they had expended,. and effected an arrangement by which the remaining 245 shares were greatly enhanced in value. Hence, it does not appear that they necessarily contemplated a contribution of stock on the part of Vintroux. There was no provision in the contract for payment to him of any part of the $35,- 000.00 or $43,000.00 paid to Holley and Stephenson, on ac- count of the money they had expended for the company. In as much as at least $35,000.00 of that money had been in- vested in the company by them and was not to be return- ed, they had no right to take it to themselves in part con- sideration of the sale of the stock of Vintroux. In other words, they could neither sell any interest in the company nor any stock of Vintroux, as a means of procuring payment of any part of $35,000.00, for there was no obligation upon the company or Vintroux to repay any part of it. While it would be equitable and just to require Vintroux to con- tribute, if a contract had been made purely and solely for the benefit of the corporation and he had accepted the benefit thereof, it would be manifestly unjust to require him to contribute one-half of his stock in a sale that would involve large repayment of money to Holley and Stephenson, which they had no right to exact either from the company or from him. If, under the circumstances of this case, he should be required to contribute at all his contribution should be determined with reference to the disposition of the pro- ceeds of the sale of the stock. As neither he nor the com- pany got any part of the $43,000.00, there is no reason for requiring him to exchange his stock for it. If he had

received part of that money, he might be required to contribute *pro rata* to the stock. Omission to provide any such basis of contribution in the contract, any resolution of the directors or by any other means, argues very strongly that no contribution from him was contemplated or expected. The recital in the trust agreement of July 6, 1905, saying it had been stipulated and agreed in the contract with the United States Natural Gas Company, that upon certain terms and conditions to be performed, Holley and Stephenson would sell and transfer to that company 375 shares of stock, amounted to an interpretation of that contract, in a contract signed by Vintroux, as well as by Holley and Stephenson, and weighs very strongly against any inference of intent on the part of Vintroux to contribute, arising from his having signed that contract and, on the same day, ratified the other contract by his participation in the meeting of the board of directors. Moreover, the declaration of the purpose of the deposit, made in the contract of July 6, 1905, creating the trust, must be read, and considered in the light of this recital. It must be read also in the light of those provisions of the contract which show the uses and purposes for which the deposit of the stock was made. It was not made for the purpose of determining the basis of contribution to the shares to be taken by the United States Natural Gas Company, for that contract is entirely silent as to that matter. Some of the principal purposes of that deposit were to effect and maintain a particular organization of the board of directors; to secure the United States Natural Gas Company its 375 shares, if it should elect to take them; to shield the Holley Oil and Development Company from indebtedness, except such as should be necessary for preservation of its properties and development in the usual and ordinary way; to prevent declarations or payments of any dividends and division of any of its property among its stockholders, pending the election of the United States Natural Gas Company to take or reject the stock; and to guarantee the voting of the stock in accordance with the mutual agreement of the parties to the contract or in such manner as the trustee should determine, in the event of a disagree-

ment. Finally, the contract declares it to be the intent of the parties to vest the title to the stock in the trusee for voting purposes. These are the direct and declared uses, objects and purposes of the deposit of the stock. Of course, all of the stipulations and undertakings of the contract were in some measure dependent upon the deposit of the stock. In other words, the deposit of the stock was a means by which the parties undertook to safeguard or guarantee performance of all the stipulations of the agreement. But the performance of those stipulations, agreements and conditions were not the objects of the trust, as defined by the contract. The clause under consideration has reference to the uses, objects and purposes of the trust, set forth and stipulated in the contract, not to all of the stipulations, objects and purposes of the contract. The scope of the trust was much narrower than the scope of the contract. It related to the stock only, while the contract embraced a great many other things. The former did not touch the subject of contribution. As to division of shares, it had only one purpose, the holding of 375 shares for the United States Natural Gas Company, without reference to the sources from which they came.

As to the sources of contributions to make up the 375 shares, the contract evidenced by the resolutions and contracts disclosed by the record is, to say the least, thoroughly ambiguous. If, construed in the light of all the facts and circumstances, it does not clearly absolve Vintroux from liability to contribute, it is uncertain and indefinite as to imposition of such liability. In the interpretation of such contracts, the definition or construction put upon them by the parties, in carrying them into execution, is allowed very great weight. The trite expression of Lord Chancellor Sudgen, with reference to the rule, will bear repeating again: "Tell me what you have done under such a deed, and I will tell you what that deed means." *Chapman* v. *Coal & Coke Co.*, 54 W. Va., 193, 200; *Caperton,* v. *Caperton,* 36 W. Va. 486. Nearly four years before any question arose as to the manner in which the 375 shares of the United States Natural Gas Company were to be made up, the trustee, who was also a member of the board of directors, issued

to Vintroux trustee's certificates representing thirty shares of stock. Before that time, the condition upon which the title to the 375 shares was to vest in the United States Natural Gas Company had been performed and it had taken the stock, under the terms of the contract. After that had occurred, the trustee was at liberty to issue trustee's certificates representing stock, but not before. Prior to the happening of that event, nobody could say whether the United States Natural Gas Company owned any of the stock, for its contract of purchase was conditional. Mr. Chilton swears that, according to his recollection, he called up General Holley and asked him how many shares Vintroux was entitled to, before he issued the certificates to him, and was informed that he was entitled to thirty shares. General Holley and Major Chilton were two of the directors, and, evidently, managing directors. They were no doubt more familiar with the contract and understood its terms and provisions better than anybody else connected with the Holley Oil and Development Co. The company and all of the other stockholders acquiesced in the issuance of these certificates and their possession by Vintroux from June 1910 until April 1914. Hence, it may well be said that the corporation and its directors and stockholders construed the contract evidenced by the resolutions and agreements referred to as not requiring any contribution on the part of Vintroux.

Our conclusion is that Vintroux did not part with his title to any of his shares, nor bind himself to do so. He is, therefore; entitled to a decree against the Holley Oil and Development Co., for the sum of $14,000.00, the amount admitted to be due by way of dividend upon fifteen shares of his stock. If the fund has been wrongfully paid out or misappropriated, he is entitled to a decree against the directors responsible for such invasion of his right. He is also entitled to interest on said sum of $14,000.00 from April 24, 1914, until paid. *Cresap ·v. Brown,* 82 W. Va. 167, 96 S. E. 66. In as much as the record does not fully develope the facts relating to the exact amount of the purchase money and the commissions and expenses chargeable against it nor show necessity for a personal decree against any director, a decree

will be entered here against the Holley Oil and Development Company for said sum of $14,000.00 and interest thereon as aforesaid, and the cause will be remanded for such further relief as the plaintiff may show himself to be entitled to.

*Reversed, decree for plaintiff, remanded.*